THE STATE v. FRED ADAMS, Appellant.—98 S. W. (2d) 632.

Division Two, November 17, 1936.

*Doyne Dodd* for appellant.

*Roy McKittrick*, Attorney General, and *Frank W. Hayes*, Assistant Attorney General, for respondent.

928

ELLISON, J.—The appellant was convicted of murder in the first degree, the jury inflicting the death penalty, for the fatal shooting of Clarence Green, night marshal of the town of Campbell in Dunklin County, in March, 1934. It was not controverted at the trial that just preceding the homicide the appellant and two accomplices were engaged in burglarizing a filling station at Campbell. But he contended the burglarious enterprise had been abandoned, that he was in flight, and that Green was shot by another of the burglars for which he is not responsible. That was the basis of the first five assignments in his motion for new trial below. He has filed no brief in this court. Other assignments in the motion complain of error in the giving of instructions and in the reception of evidence.

Summarizing the evidence as briefly as possible, it was conceded by appellant's counsel in open court at the trial, and the undisputed evidence showed it, that he and two accomplices had broken into a White Eagle gasoline filling station at Campbell about eleven o'clock at night and had carried out and deposited on the ground certain articles of property which they were stealing, and had gone back presumably for more loot when the deceased Clarence Green, together with Rodney Brown, city marshal, and two other men, drove up to the filling station. The three burglars fled across lots into a wooded section behind the station. Green and Brown followed in pursuit, being guided mainly by sound since it was too dark to see the fugitives in the woods, though the moon was shining. How far from the filling station the chase continued the record does not clearly show—perhaps several hundred feet—but at any rate, Brown testified that Green was about twenty feet ahead of him and some fifty feet from what the witnesses called "the fourth fence" when suddenly one gunshot was fired by someone straight ahead of Green who sagged down and then started to straighten up. Several more shots came from an oblique direction. From their rapid succession it appeared

they had been fired from an automatic shotgun. Green reeled in a semicircle for about fifteen feet, fell, and died without uttering a word. It was twenty-five feet from the point where the shot was fired to where the body lay. The flashlight and revolver of the deceased were found about where he was thought to be when the first shot was fired. The burglars eluded pursuit, and the appellant several miles further on threw the rifle and revolver he was carrying into the St. Francois River.

Dr. Rigdon, the coroner, found numerous wounds upon the corpse caused by shot from a shotgun. There were some fifty of these across the chest from the lower ribs up to the shoulders, and half as many more over the face. The chest wounds penetrated the plural cavity and also, he thought, the heart and large blood vessels leading therefrom. They were mortal wounds from which death would result almost instantaneously, and went practically straight in as if the shot had been fired from in front. He believed the wounds in the face might have come from a different charge. The undertaker, Mr. Landess, testified he found on the left leg of the body below the knee some thirty or more shot wounds which entered in a slanting direction.

The appellant was arrested in Paragould, Arkansas, a few days later. Sheriff Donaldson of Dunklin County, driven by Mr. R. Earl Jones, a banker of Kennett, brought him back to Missouri. On that trip the appellant made a statement. Shortly afterwards he volunteered to, and did, accompany the officers to the scene of the homicide and showed how it occurred. In addition to that he made a written statement. In these statements he told of the burglary of the filling station, of the approach of the officers, of his giving the alarm, and of the flight of the burglars. He admitted he carried a single-barrel shotgun and that when he was near the fourth fence he turned back and shot once, but said he elevated his gun and fired high, his purpose being merely to frighten whoever it was coming.

His statement to the officers further was that he extracted the discharged shell from his gun and put in another while he was on the run. On the ground one of the officers reenacted his movements in front of him, taking four or five paces in the direction he said he went from the place where he fired the shot, and the appellant agreed it was that way. This led to the point where a single, fired shotgun shell was found. Over to the right some forty-five feet four similar shells were found close together. All five were of the same size and kind. The appellant said they came out of the same box and that all were loaded with No. 4 shot. Two or three trees at the place of the shooting had shot embedded in them. One of these was on a line from the point where the appellant told the officers he was standing when he fired, to the point where the deceased was at that

time. The tree was not between the two men but was *behind* the deceased, and the shot were about three or four feet up the tree trunk. Another small sapling close to where Green fell had shot in it but they extended only several inches above the ground.

Mr. Laffler, a civil engineer, made a plat of the *locus criminis* from accurate measurements. It showed that *between* the point where the single discharged shell from appellant's gun was found and the point where the deceased was at the time of the first shot a tree stood in the line of fire. Appellant on the witness stand denied he had told the officers he was standing by the fourth fence when he fired his gun and that he was running when he extracted the shell from it and reloaded it. He said he followed his habit of drawing the shell out of the gun standing on the spot where he fired, and that it fell at his feet. This meant he stood where the shell was found when he shot, and in connection with the testimony of civil engineer Laffler, put a tree between the appellant and the deceased at that time. But the testimony from the State's witnesses was that no shot were found in that tree anywhere.

This was the only important contradiction of the State's evidence by the appellant. He did also say his written confession was not taken down just as he had dictated it, and that he merely glanced through it when he signed it. But he had put his signature on each page, and Sheriff Donaldson and Deputy Sheriff Rigdon who wrote it testified it was a faithful report of what he said, and that he read it and had it read to him before he signed it. The appellant did not claim the confession was procured by promises or threats. And there was nothing in it important to the State's case, or detrimental to the appellant's defense, that was not also covered by his oral admissions.

I. The appellant's principal assignments in his motion for new trial have a double aspect. He maintains first, there was no substantial evidence that *he* fired the shot which killed Green; and second, that under the facts he cannot be held to answer as a co-conspirator for the homicidal act of his accomplices, either under that part of Section 3982, Revised Statutes 1929 (Mo. Stat. Ann., p. 2778), making every homicide committed in the perpetration or attempted perpetration of a burglary murder in the first degree, or on any other conspiracy theory.

We think appellant's basic contention is without foundation. There is substantial evidence that he was the one who killed Green. The testimony of the eyewitness, Brown, together with his own admissions to the officers, show that appellant was straight ahead of the deceased and not far distant when he shot. The deceased was facing him and the mortal wound he received was in the chest, the shot penetrating so deep as to enter the plural cavity and circulatory system. He uttered no word after that first shot. The tree straight behind him had shot

embedded in it about the height of his chest. The four shots from the gun, or guns of one or both of the other accomplices came obliquely from the side and further away. The coroner said he thought the shot in the face might have come from a different charge and the inference from his testimony is that the face wounds were not fatal. The undertaker found glancing shot wounds low down on one leg. These obviously could not have been immediately fatal. This evidence was sufficient to justify the jury in finding the appellant was the person who shot and killed Night Marshal Green.

II. It is our further opinion that the jury could have convicted the appellant even though he did not fire the fatal shot, and independently of whether he technically was engaging in the perpetration or attempted perpetration of a burglary at the time. For the proof warrants a finding that there existed between him and his accomplices "a common design to shoot and kill anyone appearing to be a menace to their escape." .[State v. Nasello, 325 Mo. 442, 458, 30 S. W. (2d) 132, 136.] The conspirators were armed when they broke into the filling station. When the officers came the appellant gave the alarm and they fled in the same general direction, carrying their firearms. Being closely pressed, at least two of them shot at their pursuers. This evidence justifies an inference—more so than in case of a robbery, where the weapons might be carried for use in the forceable taking of property—that they planned to shoot if necessary to aid in their escape. [22 A. L. R. 856, note; Conrad v. State, 75 Ohio St. 52, 66, 78 N. E. 957, 958, 6 L. R. A. (N. S.) 1154, 1157, 8 Ann. Cas. 966, 967; People v. Huter, 184 N. Y. 237, 240, 77 N. E. 6, 7; Commonwealth v. Doris, 287 Pa. 547, 552, 135 Atl. 313, 315; Burns v. State, 192 Ind. 427, 435, 136 N. E. 857, 860; State v. Boone, 124 Kan. 208, 211, 257 Pac. 739, 740; State v. Taylor, 173 La. 1010, 1046, 139 So. 463, 475; Dean v. State, 128 Neb. 466, 472, 259 N. W. 175, 178.] However the trial court did not instruct the jury on that theory.

III. But notwithstanding our ruling against appellant on the two points just decided, we must further pass on the assignments in his motion for new trial charging the homicide was not committed in the perpetration or attempted perpetration of the burglary—this because the court gave instructions authorizing a conviction on that theory, and the appellant complains there was no evidence to support them. The seventh instruction declared any homicide committed in the perpetration or attempted perpetration of a burglary is murder in the first degree, and the eighth instruction told the jury the perpetration or attempted perpetration of a burglary consists not only in burglariously breaking and entering a building and seizing property therein with intent to steal and carry it away, but includes also the act of asportation, and continues until the property has been reduced to the unmolested dominion of the burglars. This instruction then

went on to advise the jury that if they found the killing of Green was done by the appellant, or others with whom he knowingly acted in joint concert, while the appellant and such others were engaged in the perpetration or attempted perpetration of a burglary as above defined, the law would presume and supply the several mental ingredients necessary to make the homicide murder in the first degree.

The appellant's motion points to the undisputed evidence showing that when the officers approached the filling station the three accomplices abandoned the burglary and all dominion over the property they had seized, and fled from the premises, the fatal shooting occurring thereafter. He maintains that under these facts the homicide was not committed in the perpetration or attempted perpetration of the burglary within the meaning of the statute; and that he cannot be held guilty of murder in the first degree on that theory, either as the actual killer, or as a co-conspirator in the antecedent burglary if the fatal shot was fired by another of the trio.

The law in some jurisdictions is as appellant contends. In 29 Corpus Juris, section 82, page 1107, it is said: "Where the killing occurs after the felony has been completed and after the criminals have left the premises and are attempting to escape, the homicide, according to some authorities, is not committed in the perpetration of the felony; but as to this there is authority to the contrary." The cases cited in support of the text are People v. Marwig, 227 N. Y. 382, 125 N. E. 535, 22 A. L. R. 845, and People v. Huter, 184 N. Y. 237, 77 N. E. 6. Later New York decisions seem to adhere to the doctrine of the Marwig case, and it has been followed in Huggins v. State, 149 Miss. 280, 285, 115 So. 213, 214, and State v. Taylor, 173 La. 1010, 1046, 139 So. 463, 475. All these are robbery cases except the Huter case where the homicide was connected with a burglary.

To the contrary it has been held where the initial crime committed was *robbery*, that the asportation of the property seized, being an essential element of the crime, protracts it so long as the robbers are attempting to carry away and complete their dominion over the property; and hence that a killing by the robbers during their flight from the scene of the crime with the plunder is a homicide committed in the perpetration of the robbery. [State v. Brown, 7 Ore. 186, 209.] This rule was recently recognized in this jurisdiction in State v. Messino, 325 Mo. 743, 764, 30 S. W. (2d) 750, 759; and it was evidently in an attempt to follow that decision that Instruction No. 8 in the instant case was drawn. But asportation is not an essential element of *burglary*, that crime being complete when there has been a breaking and entering with intent to commit a felony, Section 4042, Revised Statutes 1929 (Mo. Stat. Ann., p. 2846 et seq.); 9 Corpus Juris, section 3, page 1009. It may be an element of the larceny under a charge of the dual crimes of burglary and larceny, but our homicide

statute, Section 3982, Revised Statutes 1929 (Mo. Stat, Ann., p. 2778), does not make a homicide committed in the perpetration of a larceny murder in the first degree. The above distinction between robbery and burglary has been pointed out in at least two decisions, People v. Boss, 210 Cal. 245, 251, 290 Pac. 881, 883; People v. Bongiorno, 358 Ill. 171, 173, 192 N. E. 856, 857.

If the foregoing view be correct that asportation does not prolong the crime of burglary beyond the felonious breaking and entering, Instruction No. 8 in this case was wrong. But we think it is unnecessary to decide that point, because the great weight of authority takes a broader view of the whole question. It is held in many jurisdictions, including Missouri, that when the homicide is within the *res gestae* of the initial crime and is an emanation thereof, it is committed in the *perpetration* of that crime in the statutory sense. Thus it has been often ruled that the statute applies where the initial crime and the homicide were parts of one continuous transaction, and were closely connected in point of time, place and causal relation, as where the killing was done in flight from the scene of the crime to prevent detection, or promote escape. The same rule has been followed in cases of *attempted* robbery where there was no asportation, the robbers being compelled to flee without obtaining any property. That this is the prevailing doctrine in this country is shown by the following cases: State v. Batson, 339 Mo. 298, 96 S. W. (2d) 384; State v. Messino, 325 Mo. l. c. 765, 30 S. W. (2d) l. c. 759; State v. Glover, 330 Mo. 709, 719, 50 S. W. (2d) 1049, 1053, 87 A. L. R. 400, 407; Bissot v. State, 53 Ind. 408, 413; Conrad v. State, 75 Ohio St. 52, 78 N. E. 957, 6 L. R. A. (N. S.) 1154, 8 Ann. Cas. 966; Francis v. State, 104 Neb. 5, 7, 175 N. W. 675, 676; Pollack v. State, 215 Wis. 200, 212, 253 N. W. 560, 565; State v. Turco, 99 N. J. Law 96, 105, 122 Atl. 844, 846; State v. Mule, 114 N. J. Law 384, 177 Atl. 125, 129; Com. v. Lawrence, 282 Pa. 128, 132, 127 Atl. 465, 467; Com. v. Doris, 287 Pa. 547, 552, 135 Atl. 313, 314; Com. v. Tauza, 300 Pa. 375, 379, 150 Atl. 649, 650; State v. Williams, 28 Nev. 395, 407, 82 Pac. 353; State v. Boone, 124 Kan. 208, 211, 257 Pac. 739, 740; State v. McMahon, 145 Wash. 672, 675, 261 Pac. 639, 640; People v. Boss, 210 Cal. 245, 251, 290 Pac. 881, 883; Burns v. State, 192 Ind. 427, 435, 136 N. E. 857, 860; People v. Bongiorno, 358 Ill. 171, 173, 192 N. E. 856, 857.

The undisputed evidence in this case shows the killing of Green was of the *res gestae* of the burglary. Instruction No. 8, if it was erroneous in the respect above pointed out, was error in favor of the appellant, rather than against him, because it allowed a conviction on the theory that the homicide was committed in the perpetration or attempted perpetration of the burglary, only if the jury found the killing was done during the actual burglary or the asportation of the property sought to be taken.

Another assignment in the motion for new trial challenges said Instruction No. 8 on the ground that it "only partially declares the law . . . for the reason that said instruction assumes that the robbers cannot abandon their dominion over the stolen property." We suppose this refers to the part of the instruction stating that the perpetration of a burglary includes the act of asportation, and continues until the stolen property has been reduced to the unmolested dominion of the burglars. That statement is too broad as a general proposition, or at least is ambiguous. It doubtless means the perpetration of a burglary continues *during the asportation* until the property has been reduced to the unmolested dominion of the burglars. It obviously would be wrong to say unqualifiedly that the perpetration of the burglary continues until the burglars have acquired complete dominion over the stolen property. Circumstances might intervene to prevent them from ever doing that. But the instruction could have done no harm in this case, because, as we have shown, the undisputed evidence shows the homicide was committed within the *res gestae* of the burglary, and the question of asportation and possession was immaterial.

IV. Another kindred assignment in the motion for new trial is that the trial court failed to instruct upon all the law of the case in that it failed to tell the jury if the appellant and his accomplices abandoned the burglary and the stolen property before the killing occurred, then the homicide was not done in the perpetration of the burglary and they should thereupon determine from the evidence whether the killing was done in such manner as to constitute murder in the first degree, second degree, or manslaughter. We know of no rule requiring the trial court to give such an instruction as a part of the law of the case under Section 3681, Revised Statutes 1929 (Mo. Stat. Ann., p 3227); if it had been given it would have been little more than a converse of the instruction which the court did give. Furthermore, since the admitted facts showed the homicide was committed within the *res gestae* of the admitted burglary perpetrated by the appellant and his two accomplices, he was not entitled to an instruction on murder in the second degree or manslaughter. [State v. Hershon, 329 Mo. 469, 487, 45 S. W. (2d) 60, 67; State v. Aguelera, 326 Mo. 1205, 1214, 33 S. W. (2d) 901, 904; State v. Nasello, 325 Mo. l. c. 458, 30 S. W. (2d) l. c. 137; State v. Messino, 325 Mo. l. c. 769, 30 S. W. (2d) l. c. 761.]

V. Another assignment in the motion complains of error in the giving of Instruction No. 3-D on the burden of proof and reasonable doubt. But the bill of exceptions shows this instruction was given at the request of the appellant; so he is in no position to complain of it.

VI. The State on cross-examination of the appellant elicited from him the admission that he had previously been twice convicted of burglary. As bearing on this testimony the trial court gave the following instruction on its own motion: "The Court instructs the jury that any testimony in this case relative to the prior convictions of defendant is admissible for the sole purpose of affecting the credibility of defendant as a witness and the weight to be given to such testimony, and you cannot consider such prior convictions for any other purpose whatsoever."

In his motion for new trial the appellant challenges this instruction, saying: "Said instruction as given is misleading, and amounts to a comment upon the credibility of the defendant as a witness in his own behalf, and should not have been given as worded, and arranged, and is suggestive of the fact that because the defendant has been heretofore convicted, his testimony should not be considered as worth very much, and was for that reason prejudicial to the defendant."

It is a little unusual to find a defendant complaining of a cautionary instruction of this kind. Here the appellant was on trial for homicide committed in the perpetration of a burglary, and the fact was brought out that he had been convicted of burglary twice before. If the instruction had been requested by the appellant and the court had refused to give it, we apprehend there would have been vigorous complaint. We see no objection to the instruction unless possibly that it may seem to assume evidence of the appellant's former convictions *would* affect his credibility as a witness. There is no qualifying phrase after the word testimony near the end of the instruction such as "if you find it does." But the assignment in the motion for new trial does not complain of the instruction on that ground; and in our opinion the meaning is plain enough to save the instruction from being prejudicially erroneous. A similar instruction (in this respect) was held sufficient in State v. Sherry (Mo. Div. 2), 64 S. W. (2d) 238, 239.

VII. The eighth ground in the motion for new trial assigns error in the giving of Instruction No. 9, which told the jury burglary is a felony, and that if they believed from the evidence the deceased Green at the time of the killing was the duly appointed, qualified and acting night marshal of the city of Campbell, and that he had probable cause to believe and did believe the appellant with his accomplices was perpetrating or attempting to perpetrate a burglary, or had committed a burglary, then the deceased not only had the right but it was his duty under the law to arrest the appellant.

Appellant asserts that such an instruction was unnecessary since a homicide committed in the perpetration of a burglary would be first-

degree murder by force of the statute, regardless of the deceased's right to make an arrest; and that the instruction "amounted to a prejudicial comment on the evidence in emphasizing the killing of an officer in the discharge of his official duties." We agree with appellant that the giving of the instruction was unnecessary, but do not concede it was prejudicial error. The theory of defense admitted the deceased night marshal was acting within his duties. The only defense was that the burglary had been abandoned and that he did not kill the deceased, but merely fired his gun in the air to frighten him. In State v. Renfrow, 111 Mo. 589, 598, 20 S. W. 299, 301, where the defense was that the accused accidentally killed an officer when shooting at someone else, the giving of a similar instruction was held not erroneous.

VIII. The final assignment in the motion for new trial is that the court erred in admitting in evidence the appellant's written confession: (1) because it was not written as he dictated it; (2) and because the officers had already given in testimony their complete statement of his confession, and the written confession so introduced "was prejudicial to defendant and should not have been given as it was not for corroboration, and it was not used in rebuttal of anything given in the statements of the officers. There is no merit in this assignment. It is true the appellant testified and the officers admitted that the written confession did not record the appellant's dictation *verbatim*. But the officers swore it faithfully reported what he said; and they further declared it was read to him and by him after it was written. The appellant admitted that he "glanced over it." Thereafter he affixed his signature to each page of it. Obviously this was sufficient proof to warrant its introduction in evidence. And it was clearly competent. It did corroborate in black and white most of what the officers said the appellant orally stated to them.

This disposes of all the assignments in the motion for new trial. We find no error in the record proper; and the judgment and sentence of the court therefore must be and are affirmed and ordered carried into execution. All concur. Date of execution set for December 18, 1936.