**STATE of Missouri, Respondent,**

v.

**Arthelle McCLAIN, Jr., Appellant.**

**No. 27251.**

Missouri Court of Appeals,
Kansas City District.

Dec. 8, 1975.

Joseph H. Moore, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Robert H. House, Asst. Atty. Gen., Jefferson City, for respondent.

Before WASSERSTROM, P. J., and SHANGLER and DIXON, JJ.

WASSERSTROM, Presiding Judge.

Defendant appeals from his conviction by a jury of first degree murder with a sentence to life imprisonment. He does not challenge the sufficiency of the evidence to support the verdict, so only sufficient facts will be stated to place the issues raised on this appeal in proper perspective.

On September 24, 1973, a robbery was attempted at a Safeway store, in the course of which a security guard, Virgil McGee, was shot and killed. Although two eye witnesses testified, neither could identify defendant as the killer. However, police officers testified to an oral confession by the defendant. In addition, one of the State's witnesses, Linda Johnson, testified that defendant while in her home on the night of September 24, 1973, the date of the shooting, stated that he had gone to the Safeway store to rob it and that he had shot McGee. The case was submitted to the jury on the theory of felony-murder under MAI-CR 6.19.

## I.

For his first point on this appeal, defendant complains of the admission of State's Exhibit 1, consisting of a photograph of the upper portion of McGee's dead body. Defendant points out that his counsel made a formal admission in court that McGee had been killed by a .32 caliber bullet, and defendant now insists that the photograph in question was not relevant to prove anything which had not already been covered by that admission. His argument continues that "the only possible reason for the State's introduction into evidence and the passing of the photograph to the jury was to enflame them against the defendant."

Some cases do hold that admission of a photograph of a dead body may be prejudicially erroneous if the defendant has admitted all the relevant facts which the photograph has any tendency to prove. *State v.*

*Robinson*, 328 S.W.2d 667, l.c. 671 (Mo.1959) is the leading case. See also *State v. Floyd*, 360 S.W.2d 630, 632–633 (Mo.1962) and *State v. Parsons*, 513 S.W.2d 430, 439 (Mo. 1974). However, *Robinson* and like cases can be distinguished on two grounds. In the first place, the *Robinson* opinion states that to designate the pictures there involved as being gruesome was "a gross understatement." That opinion goes on to describe the photographs there as "extremely obscene, offensive, vulgar, horrid, and repulsive." Exhibit 1 in this case does not begin to meet any of those characterizations, but instead is rather innocuous. Absent any inflammatory nature, the photograph would seem at worst merely cumulative and therefore non-prejudicial.

In the second place, Exhibit 1 does show an important fact not admitted by the defendant. The admission offered by defendant during the course of the trial was simply that McGee had been killed by "a .32 caliber bullet"; that McGee had been killed on September 24, 1973, with "a .32 bullets"; and that McGee was killed "by gunshot wound." The oral confession testified to by the State's witnesses was to the effect that defendant had shot two bullets at McGee, and the photograph, Exhibit 1, does show two bullet wounds. Thus the photograph corroborates the confession in a significant detail which is missing from the admission offered by defendant in open court. The admission is confined to a singular shot and a singular wound, or at least it is ambiguous with respect to the possibility of there being more than one shot and one wound. The State was entitled to offer and exhibit the photograph in order to prove that defendant's oral confession to the police corresponded with the physical facts.

## II.

Defendant next complains that the State was permitted to cross-examine defendant's wife beyond the scope of her direct examination, in contravention of § 546.260 RSMo 1969. Defendant had called his wife Leanna McClain as a witness to contradict Linda Johnson who had testified on behalf of the State that defendant had stated in her home in the presence of her and Mrs. McClain that he, the defendant, had shot McGee in the course of an attempt to rob the Safeway store. Mrs. Johnson also testified that on that occasion defendant had a bandaged hand. Mrs. McClain, on the other hand, testified that while she had frequently been in the Johnson home, she had never heard defendant make any such statement nor could she remember him ever being in the Johnson home while having a bandaged hand. In the course of this direct testimony Mrs. McClain disclaimed the ability to remember any specific date upon which she had been in the Johnson home.

The prosecutor after considerable cross-examination succeeded in getting Mrs. McClain to admit that she had been in the Johnson home on the evening of September 24, 1973, but she then claimed that on that occasion she was there alone, unaccompanied by defendant. The prosecutor further attempted, although unsuccessfully, to secure an admission from Mrs. McClain that defendant had an injured hand on the evening of September 24, 1973, and she disclaimed being able to remember whether she had made a statement to the police on this subject.

This probing constituted legitimate subject of cross-examination by the prosecutor. This related to the precise matters disputed by the conflicting testimony of Mrs. Johnson and Mrs. McClain. This cross-examination therefore fell directly within the permission of § 546.260 which provides that if a wife be called to testify on behalf of the defendant then she "shall be liable to cross-examination, as to any matter referred to in [her] examination in chief, and may be contradicted and impeached as any other witness in the case."

## III.

Closely related to the point discussed immediately above, defendant also argues that

the State was improperly permitted to contradict Mrs. McClain by a prior inconsistent statement given by her to the police. Defendant says that this prior inconsistent statement was not proper rebuttal and that it went to impeachment on a collateral matter.

■ Attending to the latter part of that argument first, the prior inconsistent statement did not go to a collateral matter. Mrs. McClain had been called by defendant for the specific and sole purpose of contradicting Mrs. Johnson who had supplied a major part of the State's case by testifying to defendant's admission that he had shot McGee while attempting a robbery of the Safeway store. The State had every right to attack Mrs. McClain's veracity as to that matter which was the one and only subject for which she had been called to testify by the defense.

■ Defendant's major emphasis under this point, however, is that Mrs. McClain's statement to the police did not really rebut her testimony to the effect that she could not remember a specific date when she was in the Johnson house with the defendant and that she could not recall the date upon which defendant had an injury to his hand. On this point, defendant argues that "the only proper cross-examination of the witness or rebuttal testimony would be that she in fact did remember being at the Johnsons on the 24th or 26th or that she did remember the date of the injury to Appellant's finger."

Defendant's understanding as to the proper scope of cross-examination in this respect is mistaken. If his theory were true, that would permit virtually every witness an easy escape from impeachment. All that a reluctant witness would have to do would be to disclaim an ability to remember, and then the opponent would have the virtually impossible chore of proving that the witness did in fact have a present memory of the fact in question. The law is not so accommodating to evasion. The true rule on this subject is that a witness can escape impeachment by prior inconsistent statement only if the witness makes a clean-cut admission with respect to the fact contained in the prior statement. This firmly established legal principle was well stated in the early case of *Peck v. Ritchey*, 66 Mo. 114, l.c. 119 (1877):

"A witness cannot avoid contradiction by equivocating, nor is the opposite party to be deprived of the right to show that the witness has made contradictory statements, either by his feigned or real forgetfulness. Nothing but an admission that he made the very statement alleged, will deprive the opposite party of the right to prove it."

To the same effect: *State v. Carter*, 259 Mo. 349, 168 S.W. 679, 680 (1914); *State v. Douglas*, Mo.App., 529 S.W.2d 162, decided October 6, 1975; McCormick on Evidence, 2nd Edition (1971), p. 72.

## IV.

Defendant next complains of the trial court's refusal to declare a mistrial because of an unresponsive statement by one of the State's witnesses to the effect that defendant on an occasion different from the crime charged "jumped up and pulled a pistol on me." This statement by the witness came as an unexpected surprise to the prosecuting attorney who requested the court to sustain the defendant's objection to the statement and to instruct the jury to disregard it. The court did so instruct the jury and overruled defendant's motion for a mistrial.

■ Substantially the same situation occurred in *State v. Walker*, Mo.App., 531 S.W.2d 55, being decided concurrently herewith. The controlling rule there stated is that when a witness unexpectedly volunteers an inadmissible statement, the nature of the action called for rests largely within the discretion of the trial court, that the trial judge has a duty to evaluate the whole situation to ascertain whether some other remedy short of a mistrial will cure the

error, and that the appellate court reviews that decision only to verify that there has been no abuse of discretion.

█ In the present case the trial judge considered the particular circumstances and held a lengthy colloquy with counsel in respect thereto. The record demonstrates a competent grasp by the trial judge of the nature of the problem and the factors to be taken into account. The court said in part:

"The question really gets down to concern, I guess, on Mr. Moore's [the defense attorney] part as to whether or not a jury can follow the instructions of the Court to disregard evidence that was unexpectedly given in a case. If I didn't believe they could, I wouldn't have any hesitation in declaring a mistrial.

\* \* \* \* \* \*

"I, personally, at the moment am satisfied that this jury will disregard the voluntary statement that the witness offered; and I am satisfied that this jury will follow any instructions accordingly. If I had any hesitancy or any doubt about that a mistrial would be ordered."

The trial court had a much better opportunity than this court to evaluate the trial situation, and its exercise of discretion will not be disturbed.

V.

Defendant next complains of a limitation imposed upon his counsel's closing jury argument. Immediately before closing arguments were to begin the State asked for and received a protective order preventing defense counsel from mentioning the names of Martie Sumner, Floretta Smith or Steven Smith.

The first two of the persons named were Safeway employees who had been interviewed by the police after the McGee killing and whose names had been endorsed upon the information. Steven Smith was an individual named in the statement which the police testified was given to them by defendant, as the driver who had given him a ride from Fairyland Park to 38th and College Streets after defendant had fled from the scene of the crime to Fairyland. Steven Smith had also been interviewed by the police and his name also had been endorsed in the information. None of these three persons had, however, appeared as a witness in the trial.

█ The State has no obligation to call all witnesses known to it, and this is true even though the prosecution may have endorsed the name of the person in question upon the information as a potential witness. The failure of the State to call such a witness does not give rise to an adverse inference in favor of the defendant. *State v. Davis,* 504 S.W.2d 221, l.c. 225 (Mo.App. 1973).

Defendant does not challenge that principle of law. However, he contends that his purpose in wanting to mention these three witnesses was not to argue any inference that the witnesses would have testified unfavorably for the State. Defendant undertakes to describe a different purpose to be served by the mention of these three individuals, his explanation in his brief being as follows:

"Rather, Appellant sought to hypothesize in closing argument:

'If Martie Sumner or Floretta Smith could identify my client as the killer in this case, don't you think they would have been here before you to so state?

'If Steven Smith, who drove the assailants from Fairyland Park at 77th & Prospect all the way to 38th & College, were able to identify my client, don't you think he would have been here to do so?' "

█ No one can know what these three individuals would have testified to had they been called as witnesses, since neither side called any one of them. The only possible purpose for the argument which defendant now says he wanted to make to the jury would be an attempt to get the jury to

draw an inference adverse to the State from the fact that those witnesses were not called. None of these witnesses were any more available to the State than they were to the defendant, and under the rule already stated, the adverse inference sought to be suggested by defendant was impermissible. No real difference can be discerned between the form of argument which defendant suggests he wanted to make as contrasted to the direct adverse inference argument which defendant concedes to be impermissible.

## VI.

Defendant argues next that the case should not have been submitted under the felony-murder rule because there was no showing of "asportation" or attempted asportation and therefore there was no evidence of a robbery or attempted robbery. In support of this contention, defendant cites *State v. Adams*, 339 Mo. 926, 98 S.W.2d 632 (1936). Rather than being an authority in his favor, *Adams* holds directly contrary to his present argument at 98 S.W.2d l.c. 637:

> "It is held in many jurisdictions, including Missouri, that when the homicide is within the res gestae of the initial crime and is an emanation thereof, it is committed in the perpetration of that crime in the statutory sense. Thus it has been often ruled that the statute applies where the initial crime and the homicide were parts of one continuous transaction, and were closely connected in point of time, place and causal relation, as where the killing was done in flight from the scene of the crime to prevent detection, or promote escape. *The same rule has been followed in cases of attempted robbery where there was no asportation,* the robbers being compelled to flee without obtaining any property. That this is the prevailing doctrine in this country is shown by the following cases: [Citing many cases]" (Emphasis added).

All that was required to show a felony-murder was that the killing of McGee was committed in an attempt to perpetrate robbery. Section 559.010 RSMo 1969. The evidence abundantly so showed. Both the confession given by defendant to the police and the admission made by him in the presence of Linda Johnson constituted direct proof on that point. As a matter of fact, this was admitted by defendant's counsel in his closing argument where he stated: "We are not contesting that the man was shot and that he is dead, and that he was killed in the commission of a robbery."

## VII.

Defendant next argues that the verdict directing instruction, Number 6, failed to comply with MAI-CR 6.19 in that the approved form of instruction requires the name of the "victim" in the first paragraph dealing with the shooting and also in the second paragraph dealing with the attempt to rob. Defendant's objection is that the victim named in the first paragraph of Instruction Number 6 is Virgil McGee, but that the victim named in the second paragraph is Safeway store. The objection seems to be founded upon the mistaken notion that the murder victim must be one and the same as the robbery victim. There is no such requirement. The murder victim in this case was McGee, but the victim of the attempted robbery was Safeway. Instruction 6 was therefore proper and does not depart from the intention of MAI-CR 6.19.

## VIII.

Defendant contends finally that Instruction Number 7, the converse of the State's verdict director, was erroneous because it concluded that if the jury found the facts as there hypothesized then it must find the defendant not guilty "of murder in the first degree." Defendant argues that the quoted phrase should have been omitted since it could have confused the jury into believing that defendant might be guilty of

some other crime even though not of murder in the first degree. A jury of reasonable men would not be so misled. Moreover, Instruction 7 follows precisely MAI-CR 3.06 and was required to do so under Rule 20.-02(c).

Affirmed.

All concur.