STATE of Missouri, Respondent,

v.

James WILLIS, Appellant.

No. WD 36696.

Missouri Court of Appeals, Western District.

April 15, 1986.

James L. McMullin, Kansas City, for appellant.

William L. Webster, Atty. Gen., Stephen D. Hawke, Asst. Atty. Gen., Jefferson City, for respondent.

Before PRITCHARD, P.J., SHANGLER, J., and MARTIN, Special Judge.

PRITCHARD, Presiding Judge.

By verdicts of a jury, appellant was found guilty of the commission of three felonies upon which it assessed punishment as follows: Count I, murder in the first degree, life imprisonment; Count II, burglary in the first degree, 15 years imprisonment; and Count III, armed criminal action, life imprisonment. In accordance with the jury's verdicts, the court sentenced appellant and committed him to the Missouri Department of Adult Institutions, the sentences to run concurrently.

The murder victim, Vernon Lacy, Sr., lived at 2526 Norton Street in Kansas City, Missouri, on March 14, 1984. The victim's son, Vernon Lacy, Jr., testified that appellant telephoned him on that date between 6:00 and 7:00 p.m. Another son, Jerry Lacy, answered the telephone and recognized appellant's voice, who told him he was coming over later that evening to pay Vernon, Jr., $5 that he owed him. About 9:00 to 9:30 p.m., appellant called again to say that he was on his way over. About 5 to 10 minutes later, according to Vernon, Jr., appellant and an unidentified man arrived in a yellow car that appellant was driving. He had on a nylon mask and was carrying a shotgun. He ordered Vernon, Jr., to get back into the house and lie down on the living room couch. Appellant then went into another room to get Jerry, pointed a shotgun at him, and took him to Vernon, Sr.'s, room. The other man told Vernon, Jr., to go into his father's bedroom, where he, Jerry, Vernon, Sr., and one Jenilla Harger were instructed to lie on the floor by appellant. Appellant then told Vernon, Sr. to get up and threw a blanket over the others' heads. Vernon, Jr., was able to see by picking up the blanket and he saw the other man, who he said was (appellant) Jimmy Willis, take Vernon, Sr., toward the back of the house where Willis instructed him to get the keys and open a locked closet. Willis told Vernon, Sr., to turn around and then Vernon, Jr., heard a gunshot. The other man, who was in the bedroom watching the other persons covered with a blanket, ran and Vernon, Jr., saw appellant running out from where Vernon, Sr., had been shot. Vernon, Jr., grabbed a pistol and ran to the front porch where he fired some shots, but he did not know whether he hit the car. There was no question in Vernon, Jr.'s mind that the man in the backroom with his father, when the

shotgun went off, was anyone other than appellant. Both Vernon Lacy, Jr. and Jerry Lacy recognized appellant because of his voice and a gold front tooth, and there was evidence that he had been in the Lacy home before.

It was stipulated by the parties that the fingerprint found on the lamp stand in the victim's home was that of appellant. A slug indentation was found in the car appellant was driving, and paint chips found at the Lacy home matched the paint of that car.

■ Appellant's first point is that the trial court erred in giving Instruction No. 5 on the felony-murder rule because there was no evidence that a robbery or an attempted robbery was committed. Relating to this issue is this further evidence: Jenilla Harger heard the victim say that that was all he had as far as money and the other person in the room called him a liar. As noted, appellant directed the victim to get the keys and to open a locked closet. The photograph of the victim's body at the scene shows his wallet within reach, and money and credit cards were strewn about.

Appellant cites *State v. Colbart*, 411 S.W.2d 92 (Mo.1967); *State v. Moton*, 476 S.W.2d 785 (Mo.1972); and *State v. Gideon*, 453 S.W.2d 938 (Mo.1970). In each of these cases, there was an actual taking of property during the robberies (in Moton, the taking was by an accomplice). These cases do not control the issue. Rather, *State v. McClain*, 531 S.W.2d 40, 46[10] (Mo.App.1975), rules the issue. There, there was an attempted robbery of a Safeway store during which a security guard was shot and killed. Defendant argued that the case should not have been submitted under the felony-murder rule because there was no showing of "asportation" or attempted asportation and therefore, there was no evidence of a robbery or attempted robbery. The court rejected the contention, citing and quoting from *State v. Adams*, 339 Mo. 926, 98 S.W.2d 632,

637[5] (1936), which held that the statute applies where the initial crime and the homicide were parts of one continuous transaction, and were closely connected in point of time, place and causal relation, and *"The same rule has been followed in cases of attempted robbery where there was no asportation, * * *."* See also *State v. Fulsom*, 534 S.W.2d 72 (Mo.App.1976), where the defendant claimed that there was no evidence that he announced a hold-up, or demanded any money or property, and did not actually take any money or property at the time the homicide was committed in the grocery store after he had immediately pointed a gun at the victim. The court, in rejecting the contention, held that the fact that defendant did not obtain any money or property did not mitigate against the circumstances shown and their sufficiency to enable the jury to draw the inference of defendant's intent. Note the similar case there cited and quoted, *State v. Bazadier*, 362 S.W.2d 603, 606[6, 7] (Mo. 1962); and see *State v. Sykes*, 436 S.W.2d 32 (Mo.1969), where the felony-murder conviction was affirmed although there was no evidence of missing property of the victim. Here, the evidence that appellant entered the victim's home with a shotgun, ordering other occupants to lie upon the floor, and escorting the victim to a back room where closet keys and money were demanded of him, clearly showed a purpose to commit robbery. Instruction No. 5 was supported by the evidence, and it is immaterial, under the facts, that there was no evidence of property taken. Point I is overruled.

■ In Point II, it is contended that the trial court erred in failing to sustain appellant's motion for judgment of acquittal because the evidence taken as a whole, and in view of his alibi evidence that he was at a different location at the time of the crime, is in such conflict with the state's evidence that it failed to disprove beyond a reasonable doubt his defense of alibi. It is argued that the state failed to impeach appellant's alibi witnesses. It is

not the state's burden to disprove the alibi defense. The court, in *State v. Jackson*, 608 S.W.2d 420, 421 (Mo.1980), held that it is immaterial that alibi witnesses were uncontroverted and unimpeached; the credibility and weight of the testimony are for the jury to determine; and the jury may believe all, some or none of the testimony of a witness, when considered with the facts, circumstances and other testimony in the case. See these cases holding to the same effect: *State v. Watson*, 511 S.W.2d 890, 893[5–8] (Mo.App.1974); *State v. Hill*, 438 S.W.2d 244, 248[9] (Mo.1969); and *State v. Eaton*, 504 S.W.2d 12, 16[5–7] (Mo. 1973). Here, there was direct and circumstantial evidence of appellant's presence at the scene of the homicide, and the credibility and weight of that evidence, along with the testimony as to the alibi, was for the jury to determine. The point is without merit, and is overruled.

■ Appellant says that the trial court erred in giving Instruction No. 4, contending that it attempts to define reasonable doubt, does not properly define reasonable doubt, and improperly states the law, thus confusing the jury and giving it a roving commission to determine the issue. MAI-CR2d 2.20 is an approved instruction, following the dictate of § 546.070(4), RSMo (Cum.Supp.1984), both of which were effective at the time of this trial. The statute requires instructions defining the term reasonable doubt. MAI-CR2d 2.20 follows the statute, and the trial court was required to give it. Thus, there can be no error, and Point III, raising the issue, is overruled.

■ In Point IV, appellant contends that the trial court erred in instructing on first degree burglary because that charge was merged in the first degree robbery charge which was the basis for the felony-murder instruction. No general objection to instructions was made, and no objection was specifically lodged against the instruction in the motion for new trial. Thus, the issue was not preserved for review. The

matter does not constitute error, plain or otherwise, because in *State v. Coats*, 668 S.W.2d 119, 120 (Mo.App.1984), the court rejected a double jeopardy claim as between the two offenses, saying: "First degree robbery requires a forcible theft, a separate and distinct element of the crime, where first degree burglary requires a knowingly unlawful entry into, or stay in, a building, as a distinct and separate element." The elements of the crime are unique, requiring proof of different facts, thus there could be no merger of them. See also *Oatsvall v. State*, 643 S.W.2d 634, 638 (Mo.App.1982); and *Bullock v. State*, 608 S.W.2d 480, 482 (Mo.App.1980). Point IV is overruled.

■ With lack of clarity, appellant presents his last Point V: "The Court erred in giving Instruction No. Nine for the reason that said instruction is incomplete, confusing, and attempts to instruct the jury on concerted action along with Count III, and gives the jury a roving commission to find the defendant guilty of burglary, murder in the commission of a robbery, and armed criminal action." Appellant makes an equally unclear one sentence argument: "The attempt to blend the improper concert instruction in with Instruction No. Nine is error under the law. *State v. Lusk*, 452 S.W.2d 219 (Mo.1970); and *Hicks v. U.S.*, 150 U.S. 442 [14 S.Ct. 144, 37 L.Ed. 1137] (1893)." Neither the Lusk nor the Hicks cases shed any light upon appellant's contention. The propriety of Instruction No. 9 was again not presented to the trial court by general objection nor raised in the motion for new trial. Again, the matter is not error, plain or otherwise, for the reason that Instruction No. 9 is derived from MAI–CR 2d 2.12, relating to defendant's responsibility for the conduct of another person; and MAI–CR 2d 25.02, on the subject of armed criminal action. Here, appellant acted in the burglary along with another unidentified person, and with him, under the evidence, committed armed criminal action. Note No. 4 of MAI–CR 2d 2.12 states

that it "is applicable when the evidence shows that the defendant acted together with another person in the commission of an offense or in any manner aided another person in the commission of an offense." Point V is overruled.

The judgment is affirmed.

All concur.