The State v. Furney.

The State of Kansas v. William Furney *et al.*

1. **Information,** *When Sufficient.* Where an information contains allegations sufficient to constitute the crime charged, such information must, on motion to quash, be held sufficient, although it contains repetitions, surplusage, and redundant allegations.

2. **Death-Bed Statements** — *Evidence* — *Practice.* It is largely in the discretion of the trial court to allow the preliminary proof to the introduction of death-bed statements of deceased to be given to the court in the presence of the jury, but good practice would suggest that such proofs be made in the absence of the jury, when properly insisted upon.

3. **Dying Declarations,** *When Admitted in Evidence.* Statements not under oath can only be admitted in evidence as dying declarations when they are made *in extremis,* and where the death of the person who made the declaration is the subject of the charge, and where the circumstances of the death are the subject of the declarations, and the person making them is in the full belief that he is about to die; and this condition of mind must be made clearly to appear. (*The State v. Medlicott,* 9 Kas. 257.)

4. **Incompetent Testimony** — *Error, Cured.* Where incompetent testimony is given to the jury, such error is cured where the defendants on their own behalf testify substantially to the same facts erroneously admitted in the first instance.

5. **Murder;** *Conspirator, When not Guilty.* Where persons combine to commit a crime, and while so engaged in such unlawful act murder is committed by one or more of the conspirators, without the knowledge or consent of the others, and the act is not the natural or probable outcome of the common design and purpose, but the independent act of one or more of the conspirators, *held,* those not participating in it are not guilty of murder.

6. **Jury** — *Conviction, When Warranted.* Where circumstantial evidence constituting a single chain is relied upon by the state for a conviction, each essential fact in the chain of circumstances must be found to be true by the jury beyond a reasonable doubt, to warrant a conviction.

*Appeal from Morris District Court.*

Prosecution for murder.   The appellants *William Furney, Martin Biglin* and *James Furney* were charged with stabbing and killing Calvin Cooper on November 24, 1886, in Morris county.   Trial was had in the district court of that county,

at the November term, 1887, and the defendants were each convicted of murder in the second degree, and each was sentenced to imprisonment for ten years in the penitentiary of the state. They appeal. The opinion states the material facts.

*Maloy & Kelly,* and *A. H. Case,* for appellants.

*J. M. Miller,* county attorney, and *John T. Bradley,* for The State.

Opinion by CLOGSTON, C.: The first question raised is as to the sufficiency of the information. The motion to quash the same was overruled. We have carefully examined the information, and the objections urged against it, and are clearly of the opinion that the information contains a sufficient statement of facts to constitute the crime of murder. It is true the information contains much that might have been stricken out, and it is open to the objection that it does not in plain and concise language, without

1. Information, when sufficient.

repetition, set forth the charge; but this is not such a defect as will warrant the court in quashing the information, as surplusage or redundant allegations will not render the information bad where there is specific matter alleged sufficient to clearly indicate the crime with such certainty that the court could pronounce judgment upon a conviction. The motion to quash was properly overruled.

The second allegation of error is, that the court permitted the preliminary proof to the introduction of the death-bed statement of Calvin Cooper to be given to the court in the presence of the jury. The hearing of this evidence by the

2. Death-bed statements— evidence— practice.

court in the presence of the jury was largely within the discretion of the court. Good practice would require that this evidence be heard, not in the presence of the jury, but in this case no motion to exclude the matter or to request that the jury be sent out was made, and therefore no error is alleged in the record.

The third assignment of error is, that it is not sufficiently

shown by the testimony that Calvin Cooper realized that he was in a dying condition, or that death was certain as the result of the wound, at the time of making the written statement offered in evidence. Before the death-bed statement of the deceased could be used, it must be clearly shown that such statement was made with a full knowledge and belief that death was imminent, and that the deceased with this knowledge, without a hope or expectation of recovery, made the statement. (See *The State v. Medlicott,* 9 Kas. 257.) The evidence offered and received by the court we think sufficient to entitle the statement of the deceased to be admitted in evidence. Four witnesses testified upon this question. Dr. D. H. Painter testified that on his second visit to the deceased he concluded that the wound was fatal, and he told Cooper so. This was on Sunday or Monday following the Thursday on which Cooper was injured. The doctor testified: "I told Cooper that I felt satisfied in my own mind that the injuries he had received were necessarily fatal, and that he would die as a result of them; that I could not do anything more for him." The doctor then testified that, after this statement, it was reduced to writing, and was signed by Cooper. The doctor also testified that Cooper told him that he knew he was going to die.

The next witness called to establish this fact was Robert Cooper, who also testified that he was present at the time the doctor told Cooper he was going to die. This witness was the uncle of Calvin Cooper, at whose house Calvin Cooper was living before and at the time of his death. He stated that the doctor told him (Cooper) that the wound would be fatal, and that he would die, and asked Cooper to make a statement of what took place at the time he received the injury. He said that at the time the doctor made this statement Cooper said he did not hardly think he was going to die, or something like that, or that he had not thought of dying at all. But after being informed by the doctor that he would die from the wound, and that if he had anything to fix up he had better fix it, the doctor asked him if he did not want to make a

3. Dying declarations, when admitted in evidence.

statement of what occurred at the school-house, and he said he did, and a short time afterward made the statement that was offered in evidence.

The third witness who testified was William Chitty, who said that he was present at the time Dr. Painter said to Cooper that if he had any worldly matters to fix up he had better fix them up right away, because he was likely to die at any time, or something to that effect. Witness testified he had a conversation with Cooper, in which Cooper told him he thought he was going to die, and that he was trying to keep it from the knowledge of his friends, and requested witness not to inform the family that he was going to die. Before making the statement he asked some one to come in and pray for him, and Mr. Simmons prayed for him; and Cooper then asked if there was anyone else in the house who would pray for him, and Chris. Anderson also prayed for him. He also stated, in response to a question asked by Mrs. Cooper, that he was prepared and ready to go at any time, speaking of his death.

The fourth witness was Samuel Rouse, who testified that he was present at the time Dr. Painter made the statement to Calvin Cooper. This witness also testified that the deceased had prayers offered for him, and that Simmons and Chris. Anderson, at his (Cooper's) request, prayed for him, and after these two had offered prayers, Cooper asked if there was anyone else in the house to pray for him, and after this statement of Dr. Painter's to him, and the prayers offered, this statement was made that was offered in evidence.

Now from this testimony it can clearly be said that Calvin Cooper made this statement under the belief that he was about to die, and that all hope of recovery had fled. The rule contended for by the defendants is, that before this statement can be offered, all the testimony must show that the deceased knew he was going to die, and the fact that his uncle testified that Cooper said he did not think he was going to die, or had not expected to die, left the matter in doubt, and that if there was any doubt about it, it was the duty of the court to exclude the statement. In this we do not concur. It was a question

of the admissibility of evidence, and was governed by the same rules that govern the admission of all other evidence. The question is, was there sufficient evidence to sustain the ruling of the court? The court passed upon this question, and there is abundant evidence to sustain the ruling.

The next allegation of error urged by the defendants is, that the court permitted the statements of the defendants given at the coroner's inquest to be offered in evidence for the state, over the objections of the defendants. It is shown by the testimony of at least one of these defendants that they were duly subpenaed to attend the inquest, and gave their testimony by reason of being subpenaed as witnesses. At this time the defendants had not been arrested or accused of the crime, other than in the dying declarations of Calvin Cooper. To make this testimony competent as their declarations, they must have been made voluntarily. (*Kirby v. The State*, 5 S. W. Rep. 165.) The question whether or not this evidence was voluntary in this particular instance, it is not necessary to determine. Whether it was or not, the evidence was made competent afterwards by the defendants. They went upon the stand as witnesses on their own behalf, and there gave substantially the same evidence as that given at the coroner's inquest. If the testimony was incompetent in the first instance, which we are inclined to believe, the defendants on cross-examination substantially stated that the evidence given at the coroner's inquest was correct. It was in substance the same as that given by them at the trial. It then becomes immaterial whether or not the testimony offered as their declarations before the coroner's inquest was properly admitted.

4. Incompetent testimony— error, cured.

The main objections urged by the defendants in their brief is to the instructions given by the court to the jury. A large number of the instructions are complained of, but we will examine only two, for the reason that they contain the only error that we have discovered, sufficient to reverse the case. The first instruction complained of, which upon examination is found to be erroneous, is as follows:

"If you believe from the evidence in this case, beyond a reasonable doubt, that the defendants, or any of them, conspired and agreed together or with others to assault Calvin Cooper by force, or to unlawfully beat or wound him, and if you further believe from the evidence, beyond a reasonable doubt, that in pursuance of such conspiracy, and in furtherance of such common design, a stab was inflicted on the body of the deceased by a member of such conspiracy at the time, and that Calvin Cooper was killed by such stab, then such of the defendants as the jury believe from the evidence, beyond a reasonable doubt, to have been parties to such conspiracy are guilty of murder, whether the identity of the person inflicting such stab be established, or not."

The objection to this instruction is, that the jury are told that if any of the defendants conspired together to assault Calvin Cooper by force, and in furtherance of that common design a stab was inflicted upon the body of the deceased by a member of the conspiracy, and Calvin Cooper was killed by that stab, then all connected with that conspiracy were guilty of murder. This is not the law. If the court had added to this instruction that if the defendants, or any of them, conspired and agreed to assault and stab Calvin Cooper, and in furtherance of that common design a stab was given from which Cooper died, that all who participated in the conspiracy were guilty of murder, the instruction would have been correct. The court in this instruction charges as to two kinds of conspiracy: first, a conspiracy to assault by force; and second, to unlawfully beat and wound. The first of these, to assault with force, would constitute a misdemeanor, and where an assault or an assault and battery is committed under an arrangement between defendants or with others, and death results from such assault, where there is no intention to kill, and such results could not have been anticipated, or likely to happen therefrom, under such circumstances the defendants would be liable for manslaughter, and not for murder. (*Brown v. The State*, 28 Ga. 199; *Rex v. Caton*, 12 Cox, C. C. 624; *United States v. Hibert*, 2 Sum. 19; *Frank v. The State*, 27 Ala. 37; *Adams v. The State*, 65 Ind. 574; *The State v. Shelledy*, 8 Iowa, 477.)

Again, where parties combine to commit a crime, and while engaged in such unlawful act murder is committed by one of such conspirators, without the knowledge or consent of the others, and the act is not the natural and probable outcome of the common design, but the independent act of one conspirator alone, and outside of the common purpose, those not participating in it are not guilty of murder. (See *Lusk v. The State*, 2 South. Rep. 256; *Kirby v. The State*, 5 id. 165; *Williams v. The State*, 1 id. 179; *The Anarchists' Case*, 12 N. E. Rep. 865.) While on the other hand, if they conspire together, or with others, to assault, beat and stab, then all who participated in the conspiracy would be guilty of murder. The court ought to have made this matter clear to the jury, and they ought to have been instructed that it was necessary to show the conspiracy to wound or stab, and that the stab or wound from which Cooper died was the result of that conspiracy.

*5. Murder; conspirator, when not guilty.*

The second instruction complained of is as follows:

"The rule requiring you to be satisfied beyond a reasonable doubt of the guilt of the defendants in order to warrant a conviction, does not require you to be satisfied beyond a reasonable doubt of each link in the chain of circumstances relied upon to establish the guilt of the defendants. It is sufficient if, taking the testimony altogether, you are satisfied beyond reasonable doubt that defendants are guilty."

Before a defendant can be convicted, every fact essential to the conviction must be found by the jury beyond a reasonable doubt, to be true. Now doubtless what the court intended to charge in this instruction was, that in the different facts that go to make up a chain of circumstances, each individual fact that constitutes or makes up the principal fact and link in such chain need not to be found to be true beyond a reasonable doubt. If the court had so instructed, such instruction would have been proper. Whatever facts or circumstances may have entered into and formed a part of a link in the chain, each minute circumstance or fact that went to make up the sum total constituting a link need not be found by the jury to be true beyond a reasonable

*6. Jury—conviction, when warranted.*

doubt; but the link itself, taking all the evidence together to establish that link, must be found to be true beyond a reasonable doubt. In other words, the chain can be no stronger than the weakest link in it. If one link in the chain is not found to be true beyond a reasonable doubt, then the chain is broken, and the defendants must be acquitted. The court afterward gave a proper instruction upon this question:

"In law the defendants are presumed to be innocent of the offense preferred against them, innocent of any guilty intent, and innocent of every fact necessary for the state to prove in order to establish their guilt. And this presumption of innocence continues to operate in their favor until their guilt is proven by the evidence, and until each and every fact necessary to constitute the offense charged against them is so proved beyond a reasonable doubt."

In this the court gave the law to the jury as it ought to have been given.

It is recommended that the judgment of the court below be reversed, and a new trial ordered.

By the Court: It is so ordered.

All the Justices concurring.