**Atwell Junior CONNER, Appellant,**

v.

**Calvin AUGER, Warden, Appellee.**

No. 78–1350.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 12, 1978.

Decided March 23, 1979.

Rehearing and Rehearing En Banc
Denied April 17, 1979.

408

Jon M. Kinnamon of Kinnamon, Kinnamon, Heintz & Russo, Cedar Rapids, Iowa, for appellant; Jerald W. Kinnamon, Cedar Rapids, Iowa, on the brief.

Thomas D. McGrane, Asst. Atty. Gen., Des Moines, Iowa, for appellee; Richard C. Turner, Atty. Gen., Des Moines, Iowa, on the brief.

Before VAN OOSTERHOUT, Senior Circuit Judge; * LAY and BRIGHT, Circuit Judges.

---

* HON. MARTIN D. VAN OOSTERHOUT, United States Senior Circuit Judge, was a member of the panel hearing this appeal but died on January 28, 1979, prior to the filing of the panel opinion.

PER CURIAM.

Atwell Junior Conner appeals from the district court's denial of his petition for a writ of habeas corpus. Conner seeks relief from a life sentence imposed by an Iowa state court upon his conviction after a jury trial for the first-degree murder of Maureen Ann Connolly in Jones County, Iowa.

Conner took no part in the killing of Ms. Connolly, but, earlier that evening he had accompanied George Nowlin in the abduction and robbery of Ms. Connolly and her companion, Michael Servey. Nowlin killed Ms. Connolly about one hour after the robbery. Conner's conviction rests upon the former Iowa felony-murder statute, which provided in pertinent part:

> All murder * * * which is committed in the perpetration or attempt to perpetrate any arson, rape, robbery, mayhem, or burglary, is murder in the first degree * * *.[1]

The Iowa Supreme Court affirmed Conner's conviction on direct appeal. *State v. Conner*, 241 N.W.2d 447 (Iowa 1976). The United States District Court, in an unpublished decision, denied Conner any relief on his habeas petition, and Conner brings this appeal. We affirm four rulings of the district court, but, under the exhaustion of remedies doctrine, we vacate certain rulings relating to issues which Conner did not fully present to the Iowa state courts.

## I. *Factual Background.*

On the evening of March 8, 1974, Conner discussed the possibility of committing a robbery with two friends, George Nowlin and Steve Martin. The next morning, March 9, at Nowlin's insistence, the trio obtained a single-shot shotgun from Conner's home. They took the gun to the apartment of Mabel Beltz, Nowlin's girlfriend, and Nowlin sawed off the gun barrel. The trio spent most of that day together.

At about 9:30 the evening of March 9, Nowlin and Conner dropped Martin off at the Beltz apartment. Nowlin told Beltz he was going to commit a robbery. Martin testified at trial that Conner had nodded his head affirmatively in response to Nowlin's statement that Conner might have to use one of the guns if he stayed with Nowlin. Conner left for a time, but at about 10:30 he rejoined Nowlin in Nowlin's car. Nowlin possessed two loaded shotguns in the car, a five-shot pump shotgun under his seat and the sawed off single-shot in the glove compartment.

At approximately midnight, Nowlin and Conner saw two teenage persons, Maureen Ann Connolly and Michael Servey, walking by the roadway. Nowlin drove past them, stopped the car, and ordered Conner into the backseat. He then turned the car around and approached the couple. Nowlin ordered the two teenagers into the car and demanded money. Servey handed some money to Conner, who deposited it in Nowlin's shirt-pocket. According to the prosecution's evidence, Conner possessed one of the shotguns during this robbery and, at least at one point, directed it towards Connolly and Servey.[2]

Nowlin drove the car containing Conner and the two teenagers north for approximately one hour. Then, at about 1:00 a. m., March 10, Nowlin stopped the car near a bridge on a gravel road in rural Jones

---

1. Former Iowa Code § 690.2. The Iowa legislature repealed chapter 690 of the Iowa Code, effective January 1, 1978, in the course of a reorganization of Iowa's criminal statutes.

2. The sole prosecution evidence on this matter consisted of testimony by police officers regarding what Conner, who is afflicted with a severe speech impediment, told them during an unrecorded stationhouse interview.

 Conner testified at trial that, although Nowlin had handed him a gun before they accosted the young people, he threw it back into the front seat, and Nowlin thereafter controlled both shotguns.

 Conner asserts that this trial testimony was identical in substance to his statements to the detectives. He suggests that the detectives' differing version of his account resulted from the detectives' difficulty in understanding him, because of his speech impediment, at the unrecorded interview.

County, got out of the car, and ordered Maureen Connolly to accompany him. Nowlin took both guns with him and threatened to kill Servey and Conner if they left the car. Nowlin then raped the girl at a location near the vehicle. When Ms. Connolly attempted to escape, Nowlin killed her with two blasts from a shotgun.

Sometime later, after forcing Conner to drive the car into another county, Nowlin also killed Michael Servey.

Nowlin and Conner returned to the Beltz apartment in Cedar Rapids. Nowlin told Beltz he had killed the two teenagers, and he thereafter threatened to kill Beltz, Martin, and Conner if they informed on him to the police.

Martin went to the police on March 18, 1974, and reported what he knew of the killings. At about 4:00 a. m. the next day, officers awakened Conner at his home and asked him to voluntarily accompany them to the police station for questioning.

Three officers interviewed Conner, who had not yet been arrested, for about one and one-half hours at the police station. The officers admitted at trial that, because of a severe speech impediment possessed by Conner, they found it difficult to understand many of Conner's statements. Yet, the officers did not record the interview. During this interview, Conner admitted his participation in the events prior to Nowlin's killing of Connolly and Servey, but he refused to sign a written summary of his statements as prepared by the officers after the interview.

Conner was tried upon an indictment for murder without specification of degree. At trial, the prosecutor never alleged that Conner participated in the rape or murder of Ms. Connolly. However, the prosecutor argued that Conner committed first-degree felony-murder, on the theory that Conner participated in the robbery of Michael Servey and that Nowlin killed Maureen Connolly in the perpetration of that robbery. Conner sought to defend by showing that he took no active part in the robbery and that, in any event, Nowlin killed Ms. Connolly for independent reasons after the completion of the robbery. The trial judge instructed the jury solely on first-degree felony-murder, in accordance with the prosecution theory.

## II. Conner's Claims for Relief.

In his habeas petition and on this appeal, Conner raises six claims for relief. We discuss those claims seriatim, in the order presented by Conner.

1) The indictment charging Conner with "murder" of Maureen Connolly failed to provide adequate notice of the charge of first-degree murder eventually submitted to the jury.

■ The indictment charged Conner with "murder" without any specification of degree. Conner filed a pretrial motion for a bill of particulars, asking under which section of the Iowa murder statute he was charged and whether the prosecution would invoke the felony-murder rule. The state trial court denied that motion, in effect allowing the prosecution to proceed on alternative theories of murder.

The trial court ultimately instructed the jury solely on first-degree felony-murder, and it overruled Conner's objection that the indictment was insufficient to charge other than second-degree murder.

In its order denying habeas relief, the federal district court denied Conner's claim that the indictment was insufficient for essentially the same reasons given by the Iowa Supreme Court in upholding the trial judge's rulings on appeal: the indictment, together with the minutes of grand jury testimony attached to it, amply informed Conner of the specific act for which he was charged. The Iowa Supreme Court fully discussed this issue in *State v. Conner, supra*, 241 N.W.2d at 451–52, 460.

■ After reviewing the record, we agree with the federal district court's conclusion that the ruling of the Iowa courts holding the indictment sufficient does not present an issue of constitutional dimen-

sion.[3] Accordingly, we reject Conner's contention on this issue.

2) Conner's statements to the police should have been suppressed because Conner did not knowingly and voluntarily waive his rights to counsel and to remain silent.

■ The record reveals that police officers informed Conner of his *Miranda* rights both when they contacted him at his home and when he arrived at the police station on March 19. Before discussing the killings with the police, Conner signed a waiver of rights form, which the officers had explained in detail.

We agree with the district court that the record supports the state courts' findings that Conner's low intelligence did not, in these circumstances, preclude his understanding the nature and significance of his constitutional rights and that Conner's uncounselled statements to the police were the product of an essentially free and unconstrained choice.

3) Prosecutorial misconduct deprived Conner of a fair trial.

The district court, after reviewing the final arguments and the record in this case, found no error of constitutional significance. We agree with that determination.

4) The state trial court's refusal to permit Conner to introduce polygraph evidence in his defense served to deny Conner due process.

■ Conner underwent two polygraph examinations which tended to support the truthfulness of his version of the abduction and robbery of Michael Servey and Maureen Connolly, *i. e.*, that Conner never possessed either of the guns during those events. The trial court, however, granted the prosecutor's motion to exclude the polygraph results as evidence, on the ground that established Iowa law precludes the use of unstipulated polygraph evidence at trial over the objection of a party.

Conner contends that the polygraph examination results were critical to his defense, and he asserts a constitutional right, based either on due process or on the right to compulsory process, to introduction of such evidence despite the contrary state evidentiary rule. Conner relies upon *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973).

The Iowa Supreme Court discussed this issue thoroughly and thoughtfully in its opinion on Conner's direct appeal. *State v. Conner, supra*, 241 N.W.2d at 456–60. That court concluded that its rule excluding unstipulated polygraph evidence rests upon considerations of fairness and reliability and that Conner's right to present evidence in his defense cannot override such an evidentiary rule. *Id.* at 458.

In light of the continued lack of agreement in the scientific community as to the accuracy of polygraph techniques, *see e. g., United States v. Alexander*, 526 F.2d 161, 166 (8th Cir. 1975), we cannot say that the trial court's exclusion of the unstipulated polygraph evidence deprived Conner of a fair trial.

5) The trial court's instructions failed to adequately present Conner's theory of defense to the jury.

---

3. In his argument before this court that the indictment was insufficient, Conner additionally contends that the trial court fundamentally erred in failing to instruct the jury on second-degree murder. The Iowa Supreme Court, on Conner's direct appeal, indicated that Conner failed to preserve an objection to the lack of a second-degree instruction. *State v. Conner, supra*, 241 N.W.2d at 461. However, that court also held that the evidence did not justify a second-degree instruction. *Id.*

Conner argues the evidence supported a second-degree instruction because the jury might have found that the robbery was completed when Nowlin killed Maureen Connolly and that the murder occurred in the course of a kidnapping in which Conner allegedly participated. Former chapter 690.3 of the Iowa Code apparently makes murder in the course of a kidnapping second-degree murder.

However, Conner failed to properly present in his petition for habeas corpus a claim that the trial court committed fundamental error in refusing to instruct on lesser included offenses, even if he preserved such a claim at trial. The district court did not consider such a claim, and, under the circumstances, we do not reach that claim.

Conner asserted as one theory of defense that Nowlin's intention to kill Ms. Connolly arose independently of the robbery—possibly resulting from Ms. Connolly's attempted escape after Nowlin raped her. On that theory, Conner alleges that Nowlin's killing of Ms. Connolly was not "in the perpetration of" the robbery, so the felony-murder rule is inapplicable.

At trial, Conner requested the trial judge to instruct the jury that they could find Ms. Connolly was killed in the perpetration of the robbery,

> only if the death of Maureen Connolly occurred in the commission of the crime of robbery against Michael Servey [or] incident to the commission of that crime rather than arising from the formation [by Nowlin] of a separate and specific intent unrelated to the crime of robbery * * *.

The state trial judge rejected Conner's proposed instruction, instructing the jury instead that

> such action of George Nowlin [the killing] was committed in the perpetration of a robbery * * * only if the robbery * * * and the killing of Maureen Ann Connolly were *parts of one continuous series of acts connected with each other.* [Instruction No. 12 (emphasis added).]

Conner contends that this instruction failed to present to the jury his theory of defense, in that it allowed an implication of Conner's guilt for felony-murder on the basis of a *temporal* connection between the robbery and Nowlin's killing of Ms. Connolly, without any jury finding of a *causal* relation between those two crimes.

As we explain *infra* at 413–414, we think this contention is interrelated with Conner's sixth claim, which we deem unexhausted in the state courts. We therefore discuss this "theory of defense" claim together with Conner's sixth claim, to which we now turn.

6) The state trial court's application of the Iowa felony-murder rule in this case violated Conner's right to due process, by attributing malice aforethought, a crucial element of murder in the first degree, to Conner without a jury finding that Conner in fact possessed such *mens rea.*

Conner's position on this issue is not stated with clarity in his brief, but we outline his argument below, as we understand it.

The Iowa felony-murder statute under which Conner stands convicted provides in relevant part:

> All *murder* * * * which is committed in the perpetration or attempt to perpetrate any arson, rape, robbery, mayhem, or burglary, is murder in the first degree * * *. [Emphasis added.][4]

The Iowa Supreme Court has made it clear that, unlike the common law felony-murder rule, this statute does not make all *killings* in the course of designated felonies murder. Rather, the statute makes *murder* in the course of such felonies first-degree murder. *State v. Conner,* 241 N.W.2d 447, 463 (Ia. 1976).

At the time of the events in question, Iowa law defined "murder" as the killing of "any human being with malice aforethought, either express or implied * * *."[5]

According to Conner's argument, in order to convict him of first-degree felony-murder under these statutes, the state had to prove (1) that Ms. Connolly was killed in the perpetration of a robbery in which Conner participated, and (2) *that Conner acted with malice aforethought,* either in relation to the killing or in the commission of the underlying felony.

The critical portion of the judge's instructions on the Iowa felony-murder rule reads as follows:

> Before the defendant can be found guilty of the crime of murder in the first degree, the State must establish by the evidence beyond a reasonable doubt each and all of the following propositions:

---

4. Former Iowa Code § 690.2. *See* note 1 *supra.*

5. Former Iowa Code § 690.1. *See* note 1 *supra.*

1. That on or about March 10, 1974, in Jones County, Iowa, George Nowlin did unlawfully shoot Maureen Ann Connolly.

2. That Maureen Ann Connolly died as a result of being shot by George Nowlin.

3. That such action of George Nowlin was done by him with malice aforethought.

4. That such action of George Nowlin was committed in the perpetration of a robbery of Michael Servey by defendant and George Nowlin, in which robbery defendant either actively participated or knowingly aided and abetted George Nowlin. [Instruction No. 11.]

Conner alleges that these instructions conclusively imputed *Nowlin's* malice aforethought to Conner, without requiring the jury to find that Conner in fact possessed that *mens rea* requisite for a conviction of murder. Thus, according to Conner, his possession of malice aforethought was implied under the instructions, notwithstanding the lack of evidence that Conner aided, abetted, or in any way participated in Nowlin's murder of Ms. Connolly. In addition, Conner argues that the evidence shows that the killing of Maureen Connolly was an independent act by Nowlin, yet, in light of the instruction challenged in Conner's fifth claim *supra*, malice aforethought was attributed to Conner merely by reason of his participation in a robbery which preceded the killing in time.[6] Conner contends that such implication of malice aforethought violates the constitutional principle that the prosecution must prove every fact necessary to constitute the charged offense beyond a reasonable doubt. In making that argument, Conner relies upon *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) and *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

Conner contested the propriety of the pertinent instructions in his appeal to the Iowa Supreme Court, but we cannot find in the state court record any discussion of Conner's constitutional claim as outlined above either in Conner's 261-page brief to the Iowa Supreme Court or in that Court's opinion. Although the appellee has not raised the question of Conner's exhaustion of state remedies, we raise that issue *sua sponte*. As we are unable to determine that Conner fairly presented his sixth claim to the state courts, we must decline to consider the merits of that claim. The state courts should rule initially upon that possible ground for relief. See *Picard v. Connor*, 404 U.S. 270, 275–76, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Tyler v. Swenson*, 527 F.2d 877, 880 (8th Cir.), *cert. denied*, 425 U.S. 915, 96 S.Ct. 1515, 47 L.Ed.2d 766 (1976).

In addition, as already noted, we think Conner's fifth claim is interrelated with the unexhausted *Mullaney* issue. Conner contends under claim number 5 that the trial court's instructions failed to properly require a jury finding that Nowlin's killing of Ms. Connolly arose out of the robbery in a causal sense. If that contention is borne out, Conner's claim that the instructions challenged in issue number 6 imputed the necessary intent of malice aforethought to him on a constitutionally insufficient factual basis is highlighted, for the jury verdict of Conner's guilt for murder would then rest upon Conner's participation in a robbery which preceded, but was not necessarily related to, the murder.

 Because Conner failed to exhaust state remedies as to claim number 6, the district court should not have considered either that issue or the interrelated claim number 5.[7] However, Conner should be

---

6. As the *mens rea* required for robbery in Iowa is intent to steal, the jury determination that Conner participated in the robbery does not amount to a finding that he acted with malice aforethought.

7. In order to avoid piecemeal consideration of interrelated contentions, a federal court dis-

missing a nonfrivolous habeas claim for failure to exhaust state remedies must also dismiss as unexhausted any interrelated claim presented in the same petition. See *Blunt v. Wolff*, 501 F.2d 1138, 1141–42 (8th Cir. 1974); *United States ex rel. Irving v. Casscles*, 448 F.2d 741, 742 (2d Cir. 1971), *cert. denied*, 410 U.S. 925, 93 S.Ct. 1376, 35 L.Ed.2d 586 (1973). *Cf. Johnson*

given an opportunity to present his claim that, under *Mullaney v. Wilbur*, the Iowa felony-murder rule was unconstitutionally applied in this case in the Iowa courts.[8]

Accordingly, we affirm the district court's dismissal of claims numbered 1 through 4, but we vacate the district court's order regarding claims numbered 5 and 6. We remand this case to the district court for the entry of an appropriate judgment denying habeas relief on claims numbered 1 through 4 and dismissing claims 5 and 6 without prejudice.

*v. United States District Court*, 519 F.2d 738, 740 (8th Cir. 1975) (refusing mandamus to compel consideration of exhausted claims interrelated with unexhausted claims).

**8.** Some question exists concerning the proper interpretation of the Iowa felony-murder statute at issue. The district court read that statute as requiring proof that the killing was committed with malice aforethought, and that court apparently assumed that this malice element of the felony-murder offense was submitted to the jury in an instruction requiring a finding that *Nowlin* shot Ms. Connolly "with malice aforethought" and that Conner aided and abetted in this killing (in fact, the jury was asked to find only that Conner aided and abetted the *robbery*, not the killing). At 410.

Although it is clear that the unique Iowa felony-murder statute applies only to *murder*, and not to any killing in the perpetration of designated felonies, *see State v. Conner, supra*, 241 N.W.2d at 463, that statute does not clearly indicate whether the defendant must personally possess the requisite *mens rea* of malice aforethought or whether it is sufficient to convict the defendant if a coparticipant in the underlying felony, such as Nowlin in this case, possessed the necessary *mens rea*. These questions of statutory construction will be pertinent to resolution of Conner's claims numbered 5 and 6 and should be addressed initially by the Iowa state courts.