Atwell Junior **CONNER**, Appellant,

v.

**DIRECTOR OF DIVISION OF ADULT CORRECTIONS, STATE OF IOWA**, Appellee.

No. 87–2463.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 19, 1988.

Decided March 14, 1989.

Rehearing and Rehearing En Banc Denied April 25, 1989.

Jon M. Kinnamon, Cedar Rapids, Ia., for appellant.

Thomas D. McGrane, AAG, Des Moines, Ia., for appellee.

Before HEANEY,* BOWMAN and MAGILL, Circuit Judges.

MAGILL, Circuit Judge.

This is an appeal from the denial of Atwell Junior Conner's petition for the writ of habeas corpus by the United States District Court for the Northern District of Iowa.[1] *Conner v. Director of Division of Adult Corrections*, No. C 85–0140, slip op. (N.D. Iowa 1987) (unpublished). Conner argues that the State of Iowa holds him "in custody in violation of the Constitution or laws * * * of the United States." 28 U.S.C. § 2254. The primary issue before us concerns the Iowa felony-murder statute as it

relates to an unbroken chain of multiple, contemporaneous or immediate crimes. For the reasons set out below, we affirm the district court's denial of Conner's petition.

I. BACKGROUND [2]

During the evening of March 8, 1974, Conner, along with two friends, George Nowlin and Steve Martin, discussed the possibility of committing a robbery. The next day, Nowlin and Conner armed themselves with two shotguns and, at approximately 10:30 p.m., began to search for victims.

Close to midnight, while driving in Nowlin's car along a highway in Cedar Rapids, Nowlin and Conner saw a boy and a girl (Michael Servey and Maureen Ann Connolly) walking by the roadside. Their car had run out of gas nearby. Nowlin decided to rob the young couple. He ordered Conner into the backseat of the car and handed one of the shotguns to him. Then Nowlin, pointing the other shotgun at the young couple, ordered Maureen into the front passenger seat of his car and Michael into the backseat with Conner, who held his shotgun at Michael.

Nowlin then demanded Michael's money. Michael gave it to Conner, who then gave it to Nowlin. Nowlin drove to Mount Vernon, where he stopped on a rural gravel road at approximately 1:00 a.m. He ordered Maureen to get out of the car, and raped her near the car while Conner stayed in the backseat with Michael. Maureen attempted to run away, but Nowlin killed her with two shotgun blasts. Leaving her body in a ditch, Nowlin returned to the car and ordered Conner to drive. When they reached Palisades Park in Linn County, Nowlin got out of the car with Michael. He struck Michael with the shotgun and then shot him dead.

Nowlin and Conner left Michael's body there and returned to Cedar Rapids be-

* The Honorable Gerald W. Heaney assumed senior status on December 31, 1988.

1. The Honorable David R. Hansen, United States District Judge for the Northern District of Iowa.

2. The factual setting of this case is set out in greater detail in *State v. Conner*, 241 N.W.2d 447, 450–51 (Iowa 1976).

tween 2:00 a.m. and 3:00 a.m. From the beginning of the robbery to the second killing, under three hours had elapsed.

Conner and Martin later helped Nowlin to conceal some of the evidence of the crimes. Eight days after the killing, Martin went to the police and implicated Conner and Nowlin. Conner later confessed to police in the Cedar Rapids stationhouse that he had participated in the crimes.

Conner was convicted of first degree murder under Iowa's felony-murder statute[3] and given a life sentence. The Supreme Court of Iowa affirmed the conviction on direct appeal, holding, *inter alia,* that the trial court had ruled correctly on the admissibility of evidence offered by the prosecution and the propriety of several jury instructions requested by Conner. *Conner I,* 241 N.W.2d 447 (Iowa 1976). Conner then filed a habeas petition, which the United States District Court dismissed.

The Eighth Circuit Court of Appeals, in *Conner v. Auger,* 595 F.2d 407 (1979), affirmed the dismissal, but it vacated the district court's ruling on Conner's unexhausted arguments that the trial court's application of Iowa's felony-murder statute to his case was unconstitutional. The Iowa district court and Supreme Court, *Conner II,* 362 N.W.2d 449, 455 (Iowa 1985), then denied relief in defendant's post-conviction proceedings, giving rise to the instant habeas petition.

## II. DISCUSSION

### A. Exhaustion

We begin by noting that Conner has now "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b). The last time Conner was before this court, we held that of the six issues he presented, four had been properly dismissed by the district court, while two remained unexhausted since they had not been fully presented in the Iowa State court system. Therefore, we vacated the section of the district court's dismissal of Conner's petition dealing with the two unexhausted claims so the claims could first be presented in state court.

In the two unexhausted claims, Conner asserted that (1) the trial court erroneously allowed malice aforethought (an element of first degree murder) to be imputed to him and (2) the Iowa felony-murder statute was unconstitutionally applied to his case because the trial court's jury instructions did not present his theory of defense.[4] In *Conner II,* the Supreme Court of Iowa, in a post-conviction relief proceeding, upheld the Iowa district court's dismissal of both claims, holding that under § 690.2, (1) Conner was not entitled to an instruction that the State must prove a causal relationship between the underlying felony of robbery and murder and (2) Conner could be convicted of first degree murder based on Iowa's felony-murder statute without being shown to have personally participated in the killing with malice aforethought. *Id.* at 453, 455.

■ However, although Conner's state claims are now exhausted, the district court is correct to point out that "[t]his court lacks jurisdiction under 28 U.S.C. § 2254 to hear complaints regarding the propriety of state postconviction relief proceedings." Slip op. at 7. This statement is well-supported by Eighth Circuit precedent. In 1981, the court explained that:

Errors or defects in the state post-conviction proceeding do not, *ipso facto,* render a prisoner's detention unlawful or raise constitutional questions cognizable in habeas corpus proceedings. Habeas corpus in the federal courts does not serve as an additional appeal from state court convictions. Even where there may be some error in state post-conviction proceedings, this would not entitle appellant to federal habeas corpus relief since appellant's claim here represents an attack on

---

**3.** Former Iowa Code § 690.2. Chapter 690 of the Iowa Code was repealed, effective January 1, 1978, in the course of a reorganization of the criminal statutes of Iowa.

**4.** Conner had requested instructions indicating that the State was required to prove a causal relationship between the underlying felony of robbery and the murder that ultimately occurred.

a proceeding collateral to detention of appellant and not on the detention itself * * *.

*Williams v. State of Missouri,* 640 F.2d 140, 143 (8th Cir.), *cert. denied,* 451 U.S. 990, 101 S.Ct. 2328, 68 L.Ed.2d 849 (1981).[5] Having established that Conner has now exhausted his state claims, we proceed to the merits of Conner's claims.

### B. The Iowa Felony–Murder Statute

First, Conner argues that the trial court erred (thereby depriving him of fourteenth amendment due process) by failing to prove beyond a reasonable doubt that Conner had the requisite mental state to kill the victim or that he participated in the actual homicide. We believe this argument is based on a fundamental misinterpretation of the Iowa felony-murder statute.

Section 690.2 of the Iowa Criminal Code, in pertinent part, reads: "All murder * * * which is committed in the perpetration or attempt to perpetrate any arson, rape, robbery, mayhem or burglary is murder in the first degree * * *." As the Iowa Supreme Court in *Conner I* notes, section 690.2 is a distinctive statute. "Unlike the common law felony-murder rule, and statutes in most other jurisdictions, § 690.2 does not make all *killings* in perpetration of the designated felonies murder. It makes *murder* in perpetration of such felonies first-degree murder." 241 N.W.2d at 463.

█ In light of this unique statute and the Iowa cases that have applied it, we conclude that Conner's conviction under the statute is constitutional. In Iowa felony-murder cases, it is unnecessary to prove that the defendant participated in the actual homicide. In fact, *State v. Phams,* 342 N.W.2d 792, 795 (Iowa 1983) (citing *State v. Aswegan,* 331 N.W.2d 93, 98 (Iowa 1983)), emphasizes that "it is only required that the state prove [that] defendant was participating in the underlying felony." This is the controlling principle even if the underlying felony was uncompleted or unsuc-

cessful. *See* Iowa Code § 702.13 (person "participates" in offense whether it is successful or unsuccessful). Moreover, the Supreme Court of Iowa, in *Conner II,* emphasizes that " 'the overwhelming weight of authority is to the effect that if the homicide is committed in what is referred to as the *res gestae* of the [felony], that is, in connection with it, the killing constitutes murder.' " *Id.* at 463 (citing *United States v. Naples,* 192 F.Supp. 23 (D.D.C.1961), *reversed on other grounds,* 113 U.S.App.D.C. 281, 307 F.2d 618 (1962).

Conner clearly participated in the robbery of the two young victims. He was there in the planning stages of the trio's agreed-upon robbing spree and aided Nowlin both during the crimes and after (when they attempted to conceal evidence that could point to their guilt). Because Conner participated in the underlying felony of robbery, the only remaining question is whether the murder was connected to the robbery.

Conner contends that the homicide was not causally related to the underlying robbery. His theory is that Nowlin killed the girl to prevent her from reporting that Nowlin had raped her. Since the underlying felony therefore must be rape, and there is no felony-rape statute in Iowa, the argument continues, Conner's conviction under the Iowa felony-murder statute violates his right to due process under the United States Constitution.

This theory is unpersuasive because it is manifestly based on a misunderstanding of the Iowa felony-murder doctrine. The statute and the cases that have applied it do not refer to "causality." Rather, as we discuss above, the law hinges on whether Conner participated in the initial felony, and whether it was connected with the murder. Clearly, the underlying plan to embark on a robbing spree with loaded shotguns (a plan that Conner participated in from inception to conclusion) was connected with the homicide for which Conner was convicted. The robbery set into mo-

**5.** *See also Mitchell v. Wyrick,* 727 F.2d 773, 774 (8th Cir.), *cert. denied,* 469 U.S. 823, 105 S.Ct. 100, 83 L.Ed.2d 45 (1984) (§ 2254 does not authorize review of state postconviction relief proceedings).

tion a continuous chain of events that soon culminated in the murder. Since we believe the conclusion that the homicide was committed within the *res gestae* of the underlying robbery is inescapable, we are unpersuaded by Conner's interpretation of Iowa's felony-murder statute.

### C. The Jury Instructions

Conner also argues that the jury instructions used in the trial court failed to present his theory of defense and therefore deprived him of fourteenth amendment due process. However, as the district court points out, federal case law clearly establishes that improper jury instructions generally do not justify granting habeas relief.

The United States Supreme Court, in *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977), stated that "[t]he burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." *Id.* at 154, 97 S.Ct. at 1736–37. *See also Cupp v. Naughten*, 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973) (in a habeas attack, it is not enough to establish that an instruction is undesirable, erroneous, or even universally condemned; rather, it must demonstrably have violated a right guaranteed by the fourteenth amendment).

In *Williams v. Lockhart*, 736 F.2d 1264 (8th Cir.1984), this court explained that habeas relief is available for faulty jury instructions only when "petitioner establishes that improper instructions resulted in a *fundamental defect* which inherently results in a *complete miscarriage of justice* or an omission inconsistent with rudimentary demands of fair procedures." (Emphasis added). *Id.* at 1267. *Williams* emphasizes that petitioners must carry a "heavy burden" to establish that allegedly erroneous jury instructions rise "to the level of constitutional significance." *Id. See also Brouillette v. Wood*, 636 F.2d 215 (8th Cir.1980), *cert. denied*, 450 U.S. 1044, 101 S.Ct. 1766, 68 L.Ed.2d 243 (1981) (allegation

by petitioner of improper jury instructions without indication that a complete miscarriage of justice resulted do not generally form a basis for habeas corpus relief); *DeBerry v. Wolff*, 513 F.2d 1336 (8th Cir.1975) (claimed errors in instructions to the jury are generally not of such constitutional magnitude as to provide basis for habeas corpus relief); *Dietz v. Solem*, 640 F.2d 126 (8th Cir.1981) (same).

■ In light of this overwhelming weight of authority, the remaining question is whether the jury instructions in Conner's trial were sufficiently improper to infect the entire proceeding and deprive him of constitutionally guaranteed due process. Our answer is that they were not. In fact, the instructions appear to us to have clearly and properly encapsulated the substance of Iowa's felony-murder statute, which we discuss above.

### D. The *Brady* Argument

Conner also argues that the state improperly suppressed exculpatory evidence during his trial. Apparently, Craig Christopher Sudduth, George Nowlin's cellmate in jail, indicated in a written statement that Nowlin boasted in jail that he "was the one that killed the boy and girl and that Atwell Conner was just along at the time * * *. Nowlin told me that after he killed one of the two victims he pointed the gun at Conner and said he was going to kill him too." Petitioner's exhibit 28.

Conner did not learn of this statement until the discovery period in his post-conviction action even though the state possessed it during the trial.

The district court applied the test in *United States v. Agurs*, a key case in the progeny of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), regarding state suppression of exculpatory information, to this issue and correctly concluded that no constitutional error was committed in withholding Sudduth's statement.

In short, *Agurs* holds that constitutional error should be found only "if omitted evidence creates reasonable doubt or guilt

that did not otherwise exist." *United States v. Agurs,* 427 U.S. 97, 112–13, 96 S.Ct. 2392, 2401–02, 49 L.Ed.2d 342. Under *Agurs,* the character of the evidence suppressed is to be examined, not that of the prosecutor. *Id.* at 110, 96 S.Ct. at 2400. The most significant factor to consider is the probative significance of the suppressed information. If it raises a reasonable doubt of defendant's guilt, the suppression is constitutional error; if not, it is harmless error. *Id.* at 112, 96 S.Ct. at 2401.

■ In this case, the suppression is harmless. Sudduth's statement is consistent with the state's case in that it reiterates that Nowlin alone did the killing. The state agrees. It convicted Conner because he participated in the underlying felony of robbery which began a sequence of events that culminated in murder. Establishing that Nowlin was the murderer does nothing to refute the state's position that the murder was committed within the *res gestae* of the underlying felony in which Conner participated. Therefore, the suppression of Sudduth's statement did not deprive Conner of exculpatory evidence in violation of his constitutional rights.

### III. CONCLUSION

Since the jury instructions were adequate, the Iowa felony-murder statute justifies Conner's conviction, and the *Brady* claim does not raise any reasonable doubt of Conner's guilt, the appeal is denied.

HEANEY, Circuit Judge, dissenting.

I respectfully dissent. In my view, the state trial court's instructions were totally improper and resulted in the defendant being denied a fair trial. *Cupp v. Naughten,* 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973); *Williams v. Lockhart,* 736 F.2d 1264 (8th Cir.1984). Atwell Junior Connor requested that the court instruct the jury that he *"could be convicted only if Maureen's [Connolly] death occurred incident to the robbery of Michael 'rather than arising from the formation of a separate and specific intent unrelated to the crime of robbery.'"* *State v. Conner,* 241 N.W.

2d 447, 463 (Iowa 1976) (emphasis added). Instead of giving the requested instruction, the trial court instructed the jury that the killing of Ms. Connolly "was committed in the perpetration of a robbery * * * *only if the robbery * * * and the killing of Maureen Ann Connolly were parts of one continuous series of acts connected with each other."* *Conner v. Auger,* 595 F.2d 407, 412 (8th Cir.1979) (per curiam) (emphasis added). The failure to give the requested instruction deprived Conner of his only realistic defense, i.e. that he participated in the robbery of Michael Servey but he had no role whatsoever in the rape and murder of Maureen Ann Connolly, and that those events arose from Nowlin's unrelated specific intent to rape and murder Ms. Connolly and then kill her so that she could not identify him as the rapist.

A brief review of the facts demonstrates how important the requested instruction was to Conner's defense. Conner possessed an IQ of 72, bordering on retardation. He had a sixth grade education but could not read or write. He suffered from a severe speech impairment. The psychological tests showed he had more difficulty understanding abstract concepts than 97 percent of the population. *State v. Conner,* 241 N.W.2d at 453. Nowlin was the dominant partner in the Nowlin–Conner relationship. Indeed, it can be fairly said that Conner was the unwitting lackey of Nowlin.

On the evening in question, Nowlin convinced Conner to go with him to commit a robbery. They took Nowlin's car and two guns, and they went for a drive. They saw two youths on the highway. Nowlin made the decision to rob the young couple. Conner participated in the robbery by holding a gun on Michael Servey and taking money from him. He then gave the money to Nowlin. Our earlier opinion tells what happened thereafter:

> Nowlin [then] drove the car containing Conner and the two teenagers north for approximately one hour. Then, at about 1:00 a.m., March 10, Nowlin stopped the car near a bridge on a gravel road in rural Jones County, got out of the car,

and ordered Maureen Connolly to accompany him. Nowlin took *both* guns with him and *threatened to kill* Servey and *Conner* if they left the car. Nowlin then raped the girl at a location near the vehicle. When Ms. Connolly attempted to escape, Nowlin killed her with two blasts from the shotgun.

*Conner v. Auger,* 595 F.2d at 409, 410.

Conner's defense at trial was that he played no part whatsoever in the rape or murder. He emphasized the fact that Nowlin threatened to kill him if he left the car and that Nowlin's action and threats constituted a clear break in the planned robbery. Under the instructions given, however, the jury could well have believed that, because the robbery, the rape and the murder all took place within a 2 or 3-hour time frame, and because the rape and murder by Nowlin followed the robbery, it was required to find Conner guilty of first degree murder—even though there was no causal connection between the robbery in which Conner participated and the rape and murder which Nowlin alone committed. The flaw in the court's instruction was that it permitted a transferring of Conner's culpability for the robbery to Nowlin's rape and homicide if the robbery and homicide were merely "continuous" or "connected."

For the felony murder rule to apply to a person who aids the commission of a robbery, after which a rape and homicide occurs, it is necessary that the homicide be the natural and probable consequence of the commission of the robbery. Something more than a coincidence of time and place between the wrongful act and the death is necessary. It must appear that there was an actual legal relation between the killing and the crime committed such that the killing can be said to have occurred as *a part of the perpetration of the crime.* 1 *Wharton's Criminal Law and Procedure* § 252 (1957; reprinted 1966). When the killing is committed by a fellow conspirator rather than the defendant, the homicide must be in furtherance of a common design of the felony conspirators and must have been the ordinary and probable or foreseeable and probable result or effect of the execution of the conspiracy. *Id.*

Conner was at best a fellow conspirator with respect to only the robbery. He was entitled to an instruction that would have made it clear that Conner could not be held for felony murder unless a causal relationship was shown between his participation in the robbery and Nowlin's acts of rape and murder. Here the jury could easily have found, if properly instructed, that insofar as Conner was concerned, there was no causal relationship between the robbery in which he participated and the rape and murder in which Nowlin alone participated. Moreover, the conspiratorial relationship was broken when Nowlin threatened to kill Conner if he left the car.

The rule is well stated in *State v. Furney,* 41 Kan. 115, 21 P. 213, 216 (1889):

Where parties combine to commit a crime and while engaged in such unlawful act murder is committed by one of such conspirators, without the knowledge or consent of the others, and the act is not the natural and probable outcome of the common design but the independent act of one conspirator alone, and outside the common purpose, those not participating in it are not guilty of murder. *See Lusk v. State,* 2 S. 256; *Kirby v. State,* 5 S.W. 179; *The Anarchists Cos.,* 1214 E.Rep. 865. While, on the other hand, if they conspire together, or with others, to assault, beat, and stab, then all who participate in the conspiracy would be guilty of murder. The court ought to have made this matter clear to the jury * * *.

The state trial court cited to the Missouri case of *State v. Adams,* 339 Mo. 926, 98 S.W.2d 632 (1936), and a federal case, *United States v. Naples,* 192 F.Supp. 23 (D.D.C. 1961), *rev'd on other grounds,* 307 F.2d 618 (D.C.Cir.1962) (en banc), in support of the instruction given. 241 N.W.2d at 463. With all due respect to the trial court, I cannot find support for the instruction in either case. In *Adams,* the appellant and his two accomplices were in flight from a burglary when one of the accomplices shot and killed a law enforcement officer in hot pursuit of the defendant and his accom-

plices. There, the *appellant admitted that he, too, fired at the officers.* The court held that the jury could have convicted the appellant, even though he did not fire the fatal shot, because the evidence showed that there existed a common design to shoot and kill anyone appearing to be a menace to their escape. The court held that the felony murder statute applied where the "initial crime and the homicide were parts of one continuous transaction, *and were closely connected* in time, place, and *causal relation* as where the killing was done in flight from the scene of the crime to prevent detection or to promote escape." *State v. Adams,* 339 Mo. 926, 98 S.W.2d at 637. Here, the instruction given the jury encompassed only a part of *Adams;* the crucial language requiring that a causal relationship be found was omitted.

In *Naples,* the defendant broke into a home and ransacked it in search of money. As he was leaving, he was surprised by the return of the occupant. He killed her. Obviously, the murder was in perpetration of the burglary. The case does not detail the jury instruction.

I find no support for the state's position in the other cases cited. In *People v. Mason,* 54 Cal.2d 164, 4 Cal.Rptr. 841, 351 P.2d 1025 (1960), the defendant lay in wait for 20 hours to kill a woman (Rona) with whom he had had prior sexual relations. When Rona entered the home with her mother and husband, shots were exchanged and Rona's mother was killed. The court held that the jury could find that the attack was premeditated. The court alternatively considered whether the defendant could be found guilty on the theory that he entered the home to commit a burglary and remained there for 20 hours and then killed Rona's mother in an exchange of shots. It held that he could. Again, there was a clear causal relationship between the burglary and the murder, and the defendant committed both the burglary and the murder.

In *People v. Chavez,* 37 Cal.2d 656, 234 P.2d 632 (1951), the defendant, Felix Chavez, admitted that he killed his girlfriend but denied that he was guilty of murder in the first degree. His story was that she was his girlfriend, that he entered the home to be with her, that she made a remark that made him angry and that he killed her in the heat of anger. Thus, he could not be found guilty of murder in the first degree. The state's version was that he entered the home to rape her and he killed her after he had accomplished his purpose; thus, the felony murder statute was applicable. The court held that it was not necessary to prove that the killing occurred during the act of rape; it was sufficient if it resulted as a natural and probable consequence thereof. Again, the defendant committed both the rape and the murder, and one followed the other by only minutes.

The common thread in all cases relied upon by the state is that in each the defendant committed the felony and the murder, and there was a clear causal connection between the two. Here, the defendant did not rape or murder Ms. Connolly; Nowlin did and did so as an independent venture. At the very least, Conner submitted sufficient evidence that the jury should be permitted to determine under a proper instruction whether the necessary causal connection has been shown.

The majority cites to *State v. Phams,* 342 N.W.2d 792, 795 (Iowa 1983), for the proposition that, under Iowa law, it is only necessary that the state prove that the defendant was participating in the underlying felony to justify his conviction under a felony murder rule. In my view, this case does not stand for that proposition. In that case, Phams was charged with murder in the first degree under two theories: first, that he was an aider and abetter, and, second, that the murder was committed in the course of an assault in which Phams participated. The record shows that Phams was beating the law enforcement officer over the head with a chair while another participant in the assault took the officer's gun out of the holster and shot and killed the officer. In discussing the necessity for a causal relationship between the felony acts causing death, the Iowa Supreme Court stated:

**1392**

A murder is committed during the perpetration of a felony under section 690.2 "if it results as an incident to the felony and is associated with the felony as one of its hazards. It is not necessary for application of the doctrine that the murder be contemporaneous with the felony.... A lapse of time and distance are factors to be considered but are not determinative." *State v. Aldape,* 307 N.W.2d 32, 40 (Iowa 1981) (quoting *State v. Conner,* 241 N.W.2d 447, 464 (Iowa 1976)). *See also State v. Taylor,* 287 N.W.2d 576, 577 (Iowa 1980) *(felony murder must be based on causally related felony and acts causing death ).*

*State v. Phams,* 342 N.W.2d at 796–97 (emphasis added).

Unfortunately, the jury instruction in *Phams* is not available in the record. On the basis of the Supreme Court's opinion in *Phams,* however, it is clear that the court in that case recognized the necessity for a causal relationship, and here we have none. To the extent that the Iowa Supreme Court held in the instant case that such a relationship is unnecessary and that the jury need not be instructed that a causal relationship is required, it erred. The Iowa Supreme Court indicated that felony-murder is not a strict liability crime. *Conner v. State,* 362 N.W.2d 449, 456; *State v. Conner,* 241 N.W.2d at 447. The interpretation given the statute in this case, however, belies that claim. The challenged instruction deprives a defendant of due process by presuming transferred intent from the commission of the robbery to the homicide, without establishing that the homicide was perpetrated as a foreseeable consequence of the robbery. *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); *see also,* Roth and Sundby, *The Felony–Murder Rule: A Doctrine at Constitutional Crossroads,* 70 Cornell L.Rev. 446 (1985).

I would direct that Conner be released from prison unless the State of Iowa consents to giving him a new trial within 60 days.